## STATE EX REL. RUSSELL JAMES MASTERS, JR. v. RALPH H. TAHASH.

123 N. W. (2d) 600.

August 23, 1963—No. 39,129.

*John S. Connolly, Thomas E. Moore,* and *Douglas W. Thomson,* for relator.

*Walter F. Mondale,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent, warden of State Prison.

ROGOSHESKE, JUSTICE.

Relator is imprisoned under a conviction for the crime of forgery in the second degree. He attacks the validity of the judgment of conviction upon a petition for a writ of habeas corpus issued by this court.

The record discloses that the judgment resulted from a plea of guilty. The charge against relator was made by an information identical in form to one described in State v. Briton, 265 Minn. 326, 121 N. W. (2d) 577, therein held demurrable or "fatally defective." The substance and form of the information in question alleged that petitioner on August 5, 1960, "did wrongfully, unlawfully, and feloniously utter, offer and put off as true" a forged check in the amount of $97.89 which he cashed at a Standard Oil service station. As in the Briton case, the concluding printed part of the information is completed as follows:

"* * * contrary to the form of the statute in such case made and provided, the same being Section M. S. A. 620.10 said acts constituting Forgery—2nd Degree and against the peace and dignity of the State of Minnesota."

From the presentence questions following the plea, it appears that the check was a printed form of business check, the endorsement of the named payee being already forged. Petitioner found the check in an automobile that he had borrowed from a friend and admits cashing it for the purchase of tires. He disclaims any knowledge of how the check happened to be where it was and declined to reveal the name of the owner of the automobile. He admits that he knew the endorsement of the payee's name was forged, suggesting that such was done by unnamed persons who had previously used the automobile. The record leaves no doubt that he entered his plea after consulting with, and upon the advice of, his public-defender counsel, who was present at his side at the time of his plea. He expressly acknowledged that he understood the nature of the crime charged and that he knew he was charged specifically with passing a forged check at a Standard service station.

The Briton case makes clear that this information is defective.

The facts alleged limit the charge to "uttering" a forged writing in violation of Minn. St. 620.19 and not in violation of § 620.10 which makes no mention of uttering but deals exclusively with what constitutes acts of forgery. The act of forging an instrument[1] is clearly intended to be a distinct and separate crime from the act of uttering a forged instrument,[2] both under present statutes and under the new Minnesota criminal code.[3] Each such act, however, by express statutory language, constitutes the crime of forgery. Where the act of uttering under § 620.19 is alleged, the degree of forgery charged must be ascertained by reference to the sections defining forgery in the various degrees and prescribing the punishment therefor. This reference is necessary because § 620.19 declares that one who violates this section "[s]hall be guilty of forgery in the same degree as if he had forged the same." It follows that, while uttering a check and forging a check are obviously separate crimes, both acts constitute the crime of forgery in the degree prescribed by provisions dealing with forging an instrument. Thus, the defect in this information is

---

[1]Minn. St. 620.10 provides: "Every person who, with intent to defraud:

\* \* \* \* \*

"(2) Shall forge \* \* \*

\* \* \* \* \*

"An instrument or writing, being or purporting to be the act of another, by which a pecuniary demand or obligation is or purports to be or to have been created \* \* \* or by which any rights or property whatever are or purport to be or to have been created, [or] transferred, \* \* \* by which \* \* \* forging \* \* \* any person may be bound, affected, or in any way injured in his person or property;

\* \* \* \* \*

"Shall be guilty of forgery in the second degree."

[2]Minn. St. 620.19 provides: "Every person who, knowing the same to be forged or altered, and with intent to defraud, shall utter, offer, dispose of, or put off as true \* \* \*:

\* \* \* \* \*

"(3) A forged \* \* \* instrument, or writing \* \* \*, the false making, forging, or altering of which is punishable as forgery—

"Shall be guilty of forgery in the same degree as if he had forged the same."

[3]L. 1963, c. 753 (Minn. St. 609.625), effective September 1, 1963.

the concluding recital that § 620.10 was violated whereas the act alleged—that of uttering—violates § 620.19; the act of uttering is then properly denoted as constituting the crime of forgery in the second degree.

The question presented becomes: Is the defect of such nature as to prevent the court from acquiring jurisdiction over the crime charged, thereby subjecting the judgment to collateral attack by this postconviction proceeding?

It is settled that a prisoner can secure his release under a writ of habeas corpus only if a jurisdictional defect appears on the face of the record.[4] Nonjurisdictional defects, if properly presented, will be reviewed upon a writ of error or on appeal; but a collateral attack upon the judgment by any postconviction remedy, including a habeas corpus proceeding, has not been authorized.[5]

Defendant argues that the Briton case controls this decision because an information identical in form was held "fatally defective" and was therefore a nullity, preventing the court from acquiring jurisdiction to adjudge petitioner guilty of the crime of forgery in the second degree. While the court's syllabus in Briton describes the information as "fatally defective," the defect is not so characterized in the body of the opinion. In that case the defendant stood trial. In preparing for his defense he found it necessary to demur because the erroneous recital of a violation of § 620.10 did not clearly inform him whether he was being charged with the act of uttering or of forging the check, or of both. Upon the claim that defendant was misled, and in recognition of the settled rule that an accused must be fully apprised of the charge brought against him in order that he might properly prepare his defense and be protected from double jeopardy,[6] we held that the demurrer should have been sus-

---

[4]State ex rel. Becker v. Tahash, 265 Minn. 458, 122 N. W. (2d) 100.

[5]State ex rel. May v. Swenson, 242 Minn. 570, 65 N. W. (2d) 657; State ex rel. Naus v. Rigg, 250 Minn. 365, 84 N. W. (2d) 698, certiorari denied, 355 U. S. 884, 78 S. Ct. 153, 2 L. ed. (2d) 114.

[6]State v. Eich, 204 Minn. 134, 282 N. W. 810; State v. Wurdemann, 265 Minn. 92, 120 N. W. (2d) 317.

tained. Accordingly, we reversed the judgment of conviction which followed the trial.

Here we have no claim or indication whatsoever that relator was misled or prejudiced by the erroneous recital that the alleged acts were in violation of § 620.10. On the contrary, defendant at the time of his plea unequivocally advised the court that he knew that he was charged specifically with passing a forged check—not with forging it. Other answers to questions following his plea confirm the existence of that knowledge prior to his admission of guilt. Furthermore, this is not a case where defendant pled guilty to one offense and, because of the existence of a defect in the information, or in the proof as in State v. Wurdemann, 265 Minn. 92, 120 N. W. (2d) 317, was convicted of a different offense, thereby exposing him to a subsequent prosecution for the same offense. The record in this respect is clear. The court viewed the information from the standpoint of the acts charged rather than the statute violated, regarding the acts charged as constituting the crime of forgery in the second degree. Upon this record, the claim that defendant was convicted of anything other than the act of uttering as charged cannot be sustained.

Although the defect in the information appears on the face of the record, we hold it mere surplusage or an irregularity. As such, the defect is not jurisdictional and the relator, having suffered no prejudice to any substantial rights, must be deemed to have waived such irregularity by his plea.

Petition for writ denied.

Mr. Justice Otis took no part in the consideration or decision of this case.