**STATE OF LOUISIANA ex rel.
Clarence JOHNSON**

v.

**J. D. MIDDLEBROOKS, Warden.**

**Misc. No. 916.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Nov. 10, 1966.

Clarence Johnson, in pro. per.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Teddy W. Airhart, Jr., Asst. Atty. Gen., David L. French, Special Counsel, Baton Rouge, La., for respondent.

WEST, District Judge:

Petitioner, Clarence Johnson, presently serving a ten year term at Louisiana State Penitentiary after having been convicted by a jury of violation of Louisiana Revised Statutes 40:962 (illegal possession of narcotics) now petitions this Court for a writ of habeas corpus. He attacks his conviction on three grounds, i. e., (1) that he was convicted of evidence obtained by illegal search and seizure because there was no probable cause in the first place for his arrest; (2) that he has been denied a transcript of the State Court proceedings had against him; and (3) that he was convicted on insufficient evidence. After a full evidentiary hearing held before this Court, it is now concluded that there is no merit to petitioner's contentions.

On January 7, 1963, at about 9:55 p. m., Officers Verdi and Warner, both assigned to the Narcotics Division of the

New Orleans Police Department, were on duty in the area of the intersection of Harmony Street and LaSalle Street in New Orleans, Louisiana. While patrolling in their police vehicle, they came upon petitioner whom they both knew to be a narcotics addict. When petitioner saw these officers approaching in their car, he "did an about face" and ran, entering a door at 3200 LaSalle Street, which led to a barroom over which was located a hotel. These officers had worked this area of town many times, and the area was known as one where narcotics violators frequented. They testified that between 100 and 150 narcotics cases had originated in this area to their knowledge. They had spoken with petitioner on several previous occasions, and on all except one occasion, he had been friendly and conversant. On one occasion he ran from them, and on that occasion, when he was approached, he would not talk until he had swallowed something that was in his mouth, which the officers suspected to be narcotics. It was the experience of these seasoned narcotics officers that unless a narcotic violator had either committed a crime, or had narcotics in his possession, he would not run from an officer. Knowing this, when petitioner fled as he did, the officers had reason to believe that he had either committed a crime or was illegally in possession of narcotics, so they followed him into the barroom. Upon entering they did not see petitioner, but upon approaching the restroom door, petitioner opened the door and emerged. The officers immediately observed that he was apparently quite nervous and was clutching something in his hand so they placed him under arrest and ordered him to open his hand. Upon opening his hand it was found to contain a Vulcan match box, which in turn contained five tin-foil packages of a crystallized substance that was determined to be cocaine. It was this evidence that was used against petitioner at his trial.

Upon arraignment petitioner, through his retained counsel, pleaded not guilty and he was subsequently tried before a jury. He was at all times represented by his own retained counsel. The jury found him guilty as charged, for illegal possession of narcotics, and he was sentenced to serve ten years at Louisiana State Penitentiary. There was apparently no appeal taken from this conviction, and consequently no request made for a transcript of any part of the State Court record.

■ The validity of petitioner's arrest must be determined by reference to State law. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

Louisiana Revised Statutes 15:60 provides:

"Any peace officer may, without a warrant, arrest a person:

"(1) For the commission of any felony or misdemeanor committed in his presence;

\*   \*   \*   \*   \*   \*

"(4) When he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it;

\*   \*   \* "

■ In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, (1963), the United States Supreme Court, in commenting on what constitutes probable cause to believe a felony has been committed, correctly stated that an arrest, to be legal, must stand upon firmer ground than mere suspicion. The Court further stated that "The quantum of information which constitutes probable cause \* \* \* evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed \* \* \* must be measured by the facts of the particular case." While the flight of the accused alone will not ordinarily be sufficient to create probable cause needed for a lawful arrest, it is nevertheless a factor to be considered in determining whether or not there was probable cause to make the arrest. United States v. Thomas, 250 F. Supp. 771, (S.D.N.Y.1966). When tak-

ing into consideration all of the facts within the knowledge of the police officers in this particular case, together with the flight of the petitioner prior to his arrest, the conclusion must be reached that under the law of Louisiana Officers Verdi and Warner did have probable cause to arrest petitioner on January 7, 1963. The arrest having been legally made, the ensuing search and seizure, made as an incident to and following the lawful arrest, was also a lawful search and seizure. Thus, petitioner's contention that he was the victim of an unlawful arrest and an illegal search and seizure is without merit.

▆ As to petitioner's second complaint, it is the opinion of this Court that he has not been illegally denied a transcript of the State Court proceedings. During all of the State Court proceedings petitioner was represented by counsel of his choice and retained by him. No appeal was taken by petitioner from his conviction even though he was, in fact, represented by his own retained counsel. The right to appeal from a criminal conviction is not required by due process, but when an appeal is provided, it must meet the requirements of due process and equal protection. McKane v. Durston, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867; Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215; Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891.

▆ For reasons best known to petitioner and his retained counsel, no appeal was taken from his State Court conviction in April of 1963, and no complaint of constitutional violations was made by petitioner in this regard. Petitioner had the opportunity to have appealed had he and his counsel wished to do so, and the record is completely void of any evidence of any illegal deprivation of either a right or opportunity to appeal from the conviction, or of any illegal denial of a right to all or any part of the State Court transcript in connection with such an appeal. There is no showing here that had an appeal been timely perfected, and had the necessary portion of a transcript been requested, they would have been denied petitioner. Thus there is no merit to this contention.

▆ Lastly, petitioner does not contend that there was an absence of evidence on which to convict him. He merely alleges an insufficiency of evidence. Even though this record does, in fact, reflect ample evidence on which the State Court conviction could properly be predicated, nevertheless, the mere allegation of insufficiency of evidence does not present a federal question to be passed upon in these habeas corpus proceedings. Young v. Boles, 343 F.2d 136 (CA 4 1965).

For these reasons, petitioner's application for the issuance of a writ of habeas corpus must be denied.